UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIO TORRES,

    Plaintiff,

v.

NATALIE SABA, et al.,

    Defendants.

Case No. 16-cv-06607-SI

**ORDER OF DISMISSAL WITH PARTIAL LEAVE TO AMEND**

Re: Dkt. Nos. 10, 11

Mario Torres, an inmate at the Correctional Training Facility in Soledad, filed this *pro se* civil rights action under 42 U.S.C. § 1983. His complaint and several amendments thereto are now before the court for review under 28 U.S.C. § 1915A. His second motion for appointment of counsel also is before the court for review. This order requires Torres to file a third amended complaint and denies his motion for counsel.

**BACKGROUND**

A.    <u>Procedural Background</u>

In this action, Torres asserts claims against numerous defendants for alleged misdeeds in connection with criminal cases filed against him. The court required Torres to amend his complaint because he did not provide sufficient information about the criminal cases against him.

> The complaint covers such a wide variety of events, many of which are incompletely described, that the court has determined that the best course is to have Torres file an amendment to his complaint to address several basic problems with the complaint. Once the court receives that information, it can better determine whether an amended complaint will be necessary and whether any claims may be dismissed without further leave to amend. The areas Torres will be required to address in his amendment include a potential *Heck* bar to some or all claims, the immunities available to some defendants, and the lack of state action by some defendants.

Docket No. 4 at 4.

Torres then filed multiple amendments to the complaint. As of now, Torres' pleading consists of 227 pages of allegations plus 398 pages of exhibits, all of which Torres wants to have read together. *See* Docket No. 1 (a 146-page complaint with 125 pages of exhibits); Docket No. 6 (a 25-page "first amended complaint to be incorporated to original complaint amendment"); Docket No. 7 (a 3-page "addendum to plaintiff's first amended complaint"); Docket No. 8 (a 4-page "addendum to plaintiff's first amended complaint"); and Docket No. 11 (a 44-page "second amendment to complaint to accompany all previous filings" with 273 pages of exhibits). The exhibits include two 133-page almost-identical affidavits from Torres that describe in diary fashion the course of events in Torres' criminal cases. The original complaint names 35 defendants and the second amendment to the complaint names 24 defendants, with both promising to add more defendants when their names are learned.

B.  The Events and Omissions Giving Rise To The Action

Several criminal charges were filed against Torres for events on different days: domestic violence against his girlfriend, an assault on Rick Hendricks on November 28, 2012, resisting arrest on July 4, 2012, and possession of a controlled substance. The charges were not all prosecuted at the same time.

Following a trial in Contra Costa County Superior Court, Torres was convicted and received a six-year prison sentence for assault by means of force likely to produce great bodily injury and battery on Rick Hendricks. *See* Docket No. 1-4 (*People v. Torres*, Cal. Ct. App. Case No. A139734, 12/17/14 opinion at 1).

Thereafter, Torres was also prosecuted in a separate case, apparently for domestic violence against his girlfriend and/or for resisting arrest. He filed many *Marsden* motions and represented himself in some of the proceedings. He alleges that judges, the prosecutor, public defenders, court reporters, and probation officers violated his rights during these proceedings.

On December 17, 2014, Torres' conviction for the assault and battery on Rick Hendricks was overturned on appeal, and the case was remanded "for retrial or other proceedings consistent with this opinion." *Torres,* slip opinion at 14. The conviction was reversed because of the cumulative effect of the erroneous admission of hearsay evidence relating to an uncharged assault by Torres upon his girlfriend, failure to give a limiting instruction, and allowance of a cross-examination of the defendant that went far beyond impeachment. *Id.* at 13. After the reversal, the prosecution decided to retry Torres for the assault on Rick Hendricks.

After some pretrial proceedings in one or both of the cases, Torres agreed to a plea bargain and entered a guilty plea covering several cases pending against him. *See* Docket No. 1-2 at 45-48; Docket No. 1-3 at 24-27. The plea agreement apparently covered three cases, and resulted in convictions for inflicting corporal injury on a cohabitant (two counts) and resisting an executive officer (in Case No. 05-131416-0); and convictions for battery causing great bodily injury and assault by force likely to cause great bodily injury (in Case No. 05-131090-3). The abstracts of judgment filed on February 13, 2015 indicate that he received sentences totaling two years, eight months in Case No. 05-131416-0, and six years in Case No. 05-131090-3. There does not appear to be an abstract of judgment for the third case (i.e., Case No. 1-163572-1) supposedly covered by the plea agreement. *See* Docket No. 11-2 (Exhibit B to second amendment to complaint).

The complaint alleges numerous problems in Torres' first trial for the assault on Rick Hendricks, including: ineffective assistance of his public defenders; judicial misconduct; prosecutorial misdeeds; alteration or fabrication of the reporters' transcripts of several proceedings[1]; improper denial of Torres' many *Marsden* motions; and other incorrect judicial rulings in pretrial proceedings and at the trial. The appellate record allegedly is "incorrect" and "fraudulent." Docket No. 1-1 at 3 (Complaint at 12). Torres also alleges repeatedly that he was denied "discovery" in the criminal case, although the context of those allegations seems to suggest that he means that his public defender would not deliver certain documents to him (and the

---

[1] Torres declares under penalty of perjury that, as to at least some of the transcripts: "I don't know whether the judges in my court proceedings had the testimony stricken from the record or the court reporters in those proceedings took it upon themselves to doctor the testimony." Docket No. 1-4 at 18.

3

superior court judges would not order the public defender to do so), rather than that the prosecution would not turn over documents to the defense. *See, e.g.,* Docket No. 1-1 at 10 (Complaint at 19).

The complaint also alleges that, on July 4, 2012, two Concord police officers beat Torres at his home and later at the police station. Docket No. 1-1 at 5. "[F]raudulent police reports were made" and criminal charges were filed. *Id.* Public defenders, the prosecutor, judges, the internal affairs office of the police department, and courtroom staff "have done everything in their power to cover this matter up." *Id.*

Torres filed a Government Tort Claim and it was rejected as untimely filed. Docket No. 1-1 at 3. The rejection letter dated August 10, 2016, stated that the "cause of action accrued 12/17/2014," and the claim was untimely because it was presented more than one year beyond the date the cause of action accrued. Docket No. 1-4 at 40.

## DISCUSSION

A. <u>Review of The Complaint, As Amended</u>

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

1. The Complaint, As Amended, Does Not Satisfy Rule 8

Federal Rule of Civil Procedure 8(a)(2) requires that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to state the specific acts of the defendant which violated the plaintiff's rights fails to meet the notice requirements of Rule 8(a). *Hutchinson v. United States*, 677 F.2d 1322, 1328 n.5 (9th Cir. 1982). At the other end of the spectrum, Rule 8(d) requires that each allegation of a pleading be "simple, concise, and direct." Failure to comply with Rule 8(d) also may be the basis for dismissal. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant").

The complaint, with its several amendments, fails to comply with Rule 8(a)(2) or Rule 8(d). As mentioned above, the "pleading" from Torres now consists of 227 pages of allegations plus 398 pages of exhibits that he wants to have considered together. The lengthy pleading does not contain a short and plain statement of his claim showing his entitlement to relief. His writings are long on anger and short on facts, with much of the text spent disparaging other participants in his criminal case. This kind of invective fails to accomplish the purpose of a pleading, which is to provide a statement of one's claims to give the opponent notice and frame the dispute. There are not simple, concise and direct averments. The third amended complaint must comply with Rule 8.

As will be explained below, various rules and immunities require dismissal of many claims and defendants. With those claims and defendants dismissed, it should be possible for Torres to prepare a more streamlined third amended complaint that satisfies Rule 8 and complies with the court's page limits. The **third amended complaint must not exceed 30 pages**, and must be a complete statement of Torres' claims, i.e., he cannot refer to exhibits or earlier filings for the details of his claims. The third amended complaint may not repeat claims the court has dismissed without leave to amend and may not repeat claims against defendants the court has dismissed. (To the extent Torres disagrees with the court's rulings, the proper recourse is to take an appeal at the appropriate time, rather than to repeatedly present those dismissed claims to the district court.)

Another threshold problem is that the complaint, as amended, does a poor job of connecting facts to legal claims. In his complaint, he alleged dozens of pages of facts and then at

1   the end summarily listed more than 30 civil wrongs that allegedly were done to him by "the
2   defendants." *See* Docket No. 1-3 at 36-37. Similarly, in the second amendment, there are dozens
3   of pages of factual allegations, followed by a laundry list of constitutional provisions that
4   allegedly were violated by unspecified defendants. *See* Docket No. 11 at 39. A few specific
5   claims at the end of the document name particular defendants (e.g., Count IV alleges that officers
6   Hansen and Smith used excessive force in violation of Torres' Fourth Amendment rights), but
7   most of the claims are more like Count II (i.e., "defendants conspired to violate plaintiff's civil
8   rights and through their conspiracy violated Plaintiff's 1st, 4th, 5th, 6th 8th, 14th Amendment"
9   rights"), and Count III (i.e., "Defendants violated plaintiffs 1st, 4th, 5th, 6th, 8th, 14th
10  Amendment" rights). Docket No. 11 at 40. This latter sort of allegation is so generic that it fails to
11  give fair notice to defendants and the court as to what the specific claims are, and fails to comply
12  with the pleading requirements of Rule 8.

Torres must state each claim separately in his third amended complaint. For each claim, he must allege the facts showing his entitlement to relief from the defendants. The third amended complaint must identify (in each claim) each and every defendant who Torres proposes to hold liable on that claim. Torres must be careful to allege facts showing the basis for liability for each individual defendant. He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right).

2.  The Judges Are Dismissed Because They Have Absolute Immunity

The complaint, as amended, alleges that six Contra Costa County Superior Court judges acted improperly in the course of their judging duties during the prosecution of the criminal cases against Torres. A state judge is absolutely immune from civil liability for damages for acts performed in his or her judicial capacity, however. *See Pierson v. Ray*, 386 U.S. 547, 553-55

(1967) (applying judicial immunity to actions under 42 U.S.C. § 1983). Judicial immunity is an immunity from suit for damages, not just from an ultimate assessment of damages. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether an act by a judge is a judicial one relates to (1) the nature and function of the act and not the act itself, i.e., whether it is a function normally performed by a judge, and to (2) the expectations of the parties, i.e., whether they dealt with the judge in his or her judicial capacity. *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *see, e.g., Mireles v. Waco*, 502 U.S. 9, 11-13 (1991) (judge's direction to court officers to forcibly bring person before him is function normally performed by judge and taken in aid of judge's jurisdiction over matter before him); *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003) (judge absolutely immune for entering default judgment against prisoner who was not permitted to attend civil trial because entry of default judgment in a pending civil case is unquestionably a judicial act); *Atkinson-Baker & Assocs., Inc. v. Kolts*, 7 F.3d 1452 (9th Cir. 1993) (judge absolutely immune for decision to bar court reporter from continuing to provide services in case over which judge served as special master since said decision was judicial act); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (judge who denied motion for disability accommodation to litigant was absolutely immune). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump*, 435 U.S. at 356-57.

The allegations of misconduct all pertain to events that were judicial acts by the judges during the course of criminal proceedings against Torres. The allegations pertain to the judges' conduct in hearing Torres' many *Marsden* motions (i.e., motions to discharge his appointed counsel), as well as their conduct during hearings at which Torres complained that he had not been provided discovery and that transcripts had been altered. These alleged acts of misconduct were judicial acts by the judges, and no allegations suggest that any defendant-judge was acting in the clear absence of all jurisdiction. Torres contends that the judges were acting in a ministerial capacity because, "when a judge acts intentionally and knowingly to deprive a person of his constitutional rights, he exercises no discretion, he acts no longer as a judge, but as a minister of

7

his own prejudices." Docket No. 11 at 24. His contention misunderstands judicial immunity; a judicial act does not become a ministerial one simply because, in the plaintiff's opinion, the act was unconstitutional.

The judges have absolute immunity for their alleged acts. The claims against the judges are legally meritless and must be dismissed. Defendants Terri Mockler, Diane Becton, Bruce Mills, Cheryl Mills, Claire Maier, and Nancy Start are dismissed. Leave to amend will not be granted on the claims against the judges because the defects in the complaint are not ones that could be cured by amendment.

At least some claims against the judges also would be barred under *Heck*. Specifically, other than the judges' acts in the pretrial proceedings for the first trial, and the first trial, on the charges of assaulting Rick Hendricks, *Heck* bars the claims against the judges for presiding over Torres' criminal cases that culminated in his guilty plea.

### 3. The Prosecutors Have Absolute Immunity For the Acts Alleged

Torres alleges that assistant district attorney Scott Cunnane and District Attorney Mark Peterson violated his rights during the prosecution of the criminal cases against him. The allegations of the complaint are largely about Cunnane's behavior in court in Torres' presence. In his second amendment, Torres alleges that Cunnane and Peterson maliciously prosecuted him. Docket No. 11 at 24. A state prosecuting attorney enjoys absolute immunity from liability under 42 U.S.C. § 1983 for his conduct in "pursuing a criminal prosecution" insofar as he acts within his role as an "advocate for the State" and his actions are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see, e.g., Burns v. Reed*, 500 U.S. 478, 490-91 & n.6 (1991) (prosecutors absolutely immune for their conduct before grand juries and in presenting evidence at probable-cause hearings for a search warrant). Cunnane has absolute prosecutorial immunity for the acts alleged in the complaint as amended, because the allegations concern his conduct as an advocate during the initiation of the case and its presentation to the superior court in the criminal case. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993); *Imbler*, 424 U.S. at 431; *see, e.g., Burns*, 500 U.S. at 490-91 & n.6 (prosecutors

8

absolutely immune for their conduct before grand juries and in presenting evidence at probable-cause hearings for a search warrant). The claims against Cunnane and Peterson are dismissed without leave to amend.

One part of Cunnane's conduct apparently did not occur in the courtroom. Torres alleges that Cunnane contacted Torres' mother and threatened to have her followed by the police when Torres' mother denied knowing the whereabouts of his ex-girlfriend, Betty Zierke. To the extent that this conduct amounted to any cognizable legal wrong, the claim would belong to Torres' mother, not to Torres. The prosecutor's statement was in the context of trying to find a prosecution witness who apparently had gone missing, and was not an effort to change any testimony or evidence against Torres; this was not an instance of a prosecutor threatening to cause problems for a witness who will not testify against a defendant. Torres has no standing to allege a claim about an alleged wrong suffered by his mother. The claim is dismissed from this action without leave to amend.

4. *Heck* Bars Claims About The Plea Agreement, The Proceedings Leading Up To It, and The Convictions Pursuant To It.

The case of *Heck v. Humphrey*, 512 U.S. 477 (1994), held that a plaintiff cannot bring a civil rights action for damages for a wrongful conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, unless that conviction or sentence already has been determined to be wrongful. *See id.* at 486-87. A conviction or sentence may be determined to be wrongful by, for example, being reversed on appeal or being set aside when a state or federal court issues a writ of habeas corpus. *See id.* The *Heck* rule also prevents a person from bringing an action that -- even if it does not directly challenge the conviction or sentence -- would imply that the conviction or sentence was invalid. The practical importance of this rule is that a plaintiff cannot attack his conviction *in* a civil rights action for damages; the decision must have been successfully attacked *before* the civil rights action for damages is filed. The *Heck* rule was first announced with respect to an action for damages, but the Supreme Court has since applied the rule to an action that sought declaratory relief as well as damages. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). If success in the

9

§ 1983 action would "necessarily demonstrate the invalidity of confinement or its duration," the § 1983 action is barred no matter the relief sought (i.e., damages or equitable relief) as long as the conviction has not been set aside. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Torres urges that, under the Ninth Circuit's decision in *Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014), the *Heck* rule no longer poses a bar because of the reversal of the conviction for the assault on Rick Hendricks. *Jackson* helps Torres, but only in a very limited way. In *Jackson v. Barnes*, 749 F.3d 755, the plaintiff had been "convicted at his first trial in which the prosecution relied on evidence obtained in violation of his *Miranda* rights, and after the conviction was reversed he was again convicted, this time without the use of the illegally obtained evidence. The plaintiff then sued for the violation of his *Miranda* rights at the first trial." *Id.* at 758. The Ninth Circuit rejected the argument that *Heck* barred the claim. Because only the second conviction was in place and it was "undisputed that the second conviction was insulated from the inculpatory statements" that were the subject of the § 1983 claim, the claim was not barred by *Heck*. *Jackson*, 749 F.3d at 760. The Ninth Circuit determined that a "judgment in Jackson's favor would -- far from 'necessarily imply[ing]' the invalidity of his second conviction -- not have any bearing on it." *Id.* Unlike the situation in *Jackson*, Torres does not allege that he received a new trial free of the alleged errors that give rise to his § 1983 claims about the first trial. Unlike the situation in *Jackson*, Torres' allegations try mightily to tie the errors at the first trial to the errors in the retrial proceeding that culminated in his guilty plea. *Jackson* does not free Torres from the constraints of *Heck*, as *Heck* will continue to bar any claim of alleged constitutional error in the case against him for resisting arrest and inflicting corporal injury on his girlfriend, as well as for any alleged constitutional error in the proceedings on remand following the overturning of his conviction for the assault on Rick Hendricks.

If Torres has claims about alleged constitutional violations at the first trial for assaulting Rick Hendricks, he may allege such claims in his third amended complaint. He is cautioned, however, that such claims are likely of very low value due to the existence of the convictions pursuant to the guilty plea. *See Jackson*, 749 F.3d at 758 (describing the suit as one for damages and concluding that damages claim could go forward, although plaintiff "will in all likelihood

10

recover only minimal damages" because he was convicted at the second trial at which the un-*Mirandized* statement was not used). In short, he can plead claims based on alleged constitutional violations at the first trial as long as success on the claims would not call into question the convictions that are currently in place based on the plea agreement. As to claims regarding events in the other case for inflicting corporal injury and resisting arrest and for the retrial on the assault charge, the *Heck* bar remains, and the court will not grant leave to amend because it would be futile.[2]

Torres' conclusory allegations of conspiracies among various actors fails to show liability for any of them. *See, e.g.,* Docket No. 11 at 38. Conclusory allegations of a conspiracy unsupported by material facts are insufficient to state a claim. *See Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). "'A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.'" *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (citation omitted). A civil plaintiff "must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.* (internal citation and quotation marks omitted). A conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983, but may "enlarge the pool of responsible defendants by demonstrating their causal connections to the violation." *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc).

5. <u>Excessive Force Claims Against The Officers May Proceed</u>

Torres alleges that Concord police officers Michael Hansen and Daniel Smith used excessive force on him on July 4, 2012. Torres alleges that the officers beat him after thy entered

---

[2] If Torres wants to attack the convictions currently in place, he is informed that the exclusive method for a state prisoner to challenge his state court conviction or sentence in federal court is by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

11

his house, again after he was handcuffed, and a third time at the Concord police station.

Torres admits that he was convicted of one count of resisting an executive officer in the performance of his duties, *see* Cal. Penal Code § 69, but contends that his claim is not *Heck*-barred because "[a]t no time during his arrest did the plaintiff offer any resistance or pose any threat to either Hansen or Smith." Docket No. 11 at 8. Torres is wrong on the law: one of the elements of a California Penal Code § 69 offense is that, when the defendant used force or violence to resist the executive officer, the officer was performing his or her lawful duty. *See In Re Manuel G.*, 16 Cal. 4th 805, 816 (Cal. 1997); *see also Wilson v. City of Long Beach*, 567 F. App'x 485 (9th Cir. 2014) (plaintiff's conviction under California Penal Code § 69 resulted in a *Heck* bar for his excessive force claim against officers for conduct up to the time of plaintiff's arrest); *Beets v. City of Los Angeles*, 669 F.3d 1038, 1045 (9th Cir. 20120) *(Heck* barred plaintiff's excessive force claim for the deadly shooting of decedent because co-defendant's conviction for assaulting a peace officer required that jury had to find the co-defendant acted willfully against a police officer who was lawfully performing his duties and not using unreasonable force). If the officer was not performing his lawful duty at the time Torres committed the § 69 offense, Torres could challenge his conviction on direct appeal or via a habeas petition. He must assert a challenge in an appeal or habeas proceeding challenging his conviction and cannot present the challenge as a claim under § 1983. Torres also cannot simply omit an essential ingredient of his conviction in an effort to avoid the *Heck* bar.

Nonetheless, Torres is able to avoid the *Heck* bar (at least for now) because he alleges three different instances of excessive force, yet was convicted of only one violation of § 69. He states that the officers beat him as soon as they entered his home, beat him again after he was lying on his back handcuffed, and beat him in the fingerprinting room at the police station. Docket No. 11 at 11-12. It is not clear which of these uses of force, if any, match up with Torres' conduct that led to his conviction, so it cannot now be said that *Heck* bars any of the excessive force claims. To be clear: this does not mean that *Heck* will never apply to some or all of the excessive force claims, but only that there currently is not enough information in the record to make a determination. Torres may proceed with his excessive force claim against the officers. He must

12

allege the claim in his third amended complaint, or it will be deemed waived. He also must allege his municipal liability claim against the Concord Police Department in his third amended complaint or it will be deemed waived.

The *Heck* rule bars Torres' claim that the officers testified falsely during the preliminary examination because that occurred in the case in which Torres was convicted upon entry of his guilty plea and is squarely within the *Heck* rule. Further, regardless of the *Heck* bar, the officers have absolute witness immunity for liability for their testimony in court in Torres' preliminary examination or trial. *See Briscoe v. LaHue*, 460 U.S. 325, 329-46 (1983) (police officer witness at trial); *Holt v. Castaneda*, 832 F.2d 123, 127 (9th Cir. 1987) (police officer witness at probable cause hearing).

6. Claims Against The Court Reporters For False Transcripts

Torres alleges that the transcripts of his criminal proceedings are fraudulent and omit many statements. This allegedly happened not just once, but repeatedly, and with three different court reporters, i.e., defendants Monica Popper, Debbie Keys, and Michelle Rebollini. And it allegedly occurred in courtrooms of different judges.

Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Torres' allegations do not reach the level of facial plausibility as to the allegedly false and incorrect court reporting. He alleges for example, that during jury instructions, trial judge "Mills gave me a presumption of guilt. In a nutshell Mills told the jury I was guilty. This is not in the transcripts." Docket No. 11 at 37-38. One of the reasons that Torres' fraudulent court-reporting allegations are not plausible is that the court reporters have a legally-imposed duty to accurately report proceedings and have no alleged motive to stray from that duty in Torres' case. Further undermining the plausibility of the

13

claim is that no one other than Torres seems to have noticed the errors (such as the judge's statement of Torres' guilt to the jury before deliberations); one would not expect a judge telling a jury before deliberations that a defendant was guilty to be the sort of comment that would be overlooked by defense trial counsel, appellate counsel, or the three judges who decided his appeal. Leave to amend is granted so that Torres may attempt to plead facially-plausible claims against the court reporters that are not barred by the *Heck* rule.

### 7. Claims Against Probation Officers

Torres alleges that probation officer Joe Battle and David Henley made unspecified false statements in their probation reports. Leave to amend is granted so that Torres may attempt to plead a claim against these defendants. He must make nonconclusory allegations that show what false statements the probation officers made in their probation reports and why those false statements made any difference to his case. He also must identify which of his constitutional rights were violated as a result of the making of the allegedly false statements.

### 8. *Monell* Claims

Torres names Contra Costa County and the City of Concord as defendants.

There is no respondeat superior liability under § 1983, i.e. no liability under the theory that one is responsible for the actions or omissions of another, such as an employee. *See Board of Cty. Comm'rs. of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139, 1144 (9th Cir. 2012). Thus, a claim would not be stated against the County or the City merely because that entity employed the alleged wrongdoers.

Local governments, such as Contra Costa County and the City of Concord, are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978). To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: "(1) that [the plaintiff] possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional

14

right; and (4) that the policy is the moving force behind the constitutional violation." *See Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citations and internal quotation marks omitted). For municipal liability, a plaintiff must plead sufficient facts regarding the specific nature of the alleged policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief. *See AE v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012). It is not sufficient to merely allege that a policy, custom or practice existed or that individual officers' wrongdoing conformed to a policy, custom or practice. *See id.* at 636-68.

Leave to amend is granted so that Torres may attempt to allege a *Monell* claim against the City of Concord and Contra Costa County. He must be careful to allege the specific policy, custom or practices that he contends give rise to liability.

### 9. Claims Against Public Defenders

Torres names four individual public defenders and the Office of the Public Defender as defendants for failing to adequately represent him in the criminal proceedings against him.

Torres' claims against public defender Kira Murray and public defender Christopher Martin are dismissed because they are barred by the *Heck* rule. His claims against these two defendants pertain to their representation of him in pretrial proceedings that culminated with him entering a guilty plea. *See, e.g.,* Docket No. 11-3 at 55 (Kira Murray introduced herself on December 28, 2013 as his attorney for Case No. 05-131416-0 after he is brought back from San Quentin); *id.* at 94 (Christopher Martin appears as his new attorney on about November 7, 2014).

If Torres has claims against the public defenders who represented him at the first trial for assaulting Rick Hendricks, he may allege such claims in his third amended complaint. He is cautioned, however, that such claims are likely of very low value due to the existence of the convictions pursuant to the guilty plea. *See Jackson*, 749 F.3d at 758 (describing the suit as one for damages and concluding that damages claim could go forward, although plaintiff "will in all likelihood recover only minimal damages" because he was convicted at the second trial at which the un-*Mirandized* statement was not used). In short, he can plead claims based on alleged

15

constitutional violations at the first trial as long as success on the claims would not call into question the convictions that are currently in place based on the plea agreement. As to claims regarding events in the other case for inflicting corporal injury and resisting arrest and for the retrial on the assault charge, the *Heck* bar remains, and the court will not grant leave to amend because it would be futile.

Finally, as explained in an earlier order, state court criminal defendants cannot sue their lawyers in federal court under 42 U.S.C. § 1983 for most lawyer-type mistakes. A public defender does not act under color of state law, an essential element of a claim under § 1983, when performing a lawyer's traditional functions, such as entering pleas, making motions, objecting at trial, cross-examining witnesses, and making closing arguments. *Polk County v. Dodson*, 454 U.S. 312, 318-19 (1981). In his third amended complaint, Torres must confine his allegations against the public defenders to state law claims.

B. Motion For Appointment of Counsel

Torres has moved for the second time for the appointment of counsel to represent him in this action. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Here, exceptional circumstances requiring the appointment of counsel are not evident. On the allegations of the complaint and the amendments to it, the likelihood of success on the merits looks rather low and plaintiff has not shown a difficulty articulating his claims. The court's difficulty in understanding some of the claims is due to Torres' verbosity, not due to any sort of intellectual limitation on Torres. The motion for appointment of counsel is DENIED. (Docket No. 10.)

## CONCLUSION

The complaint, as amended, is dismissed with leave to amend. Plaintiff must file a third amended complaint that complies with the directions in this order no later than **August 25, 2017**, and must include the caption and civil case number used in this order and the words THIRD AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his third amended complaint must be a complete statement of his claims, except that he may not repeat claims the court has dismissed without leave to amend and may not repeat allegations against defendants the court has dismissed from this action. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") The third amended complaint must not exceed 30 pages in length. Failure to file the third amended complaint will result in the dismissal of this action.

**IT IS SO ORDERED**.

Dated: July 7, 2017

_____
SUSAN ILLSTON
United States District Judge