United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIO TORRES,

              Plaintiff,

        v.

MIKE HANSEN, et al.,

              Defendants.

Case No. 16-cv-06607-SI

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

Re: Dkt. Nos. 76, 100

This is a *pro se* civil rights action under 42 U.S.C. § 1983 in which Mario Torres asserts claims for relief based on his 2012 arrest in Concord, California. Defendants now move for summary judgment on the merits of Torres' claims and on their defense of qualified immunity. Torres opposes the motion. For the reasons discussed below, defendants' motion for summary judgment will be granted as to the false arrest, false imprisonment, and *Monell* claims, and denied as to all other claims. The case will be referred to the *Pro Se* Prisoner Mediation Program, and the court will set some discovery-related deadlines.

## BACKGROUND

A.    Statement Of Facts

The following facts are undisputed unless otherwise noted:

The events and omissions giving rise to the complaint occurred on July 4, 2012, in Concord, California. The individual defendants are Concord police officers Daniel Smith and Mike Hansen, who arrested Torres that day. The municipal defendant, Concord Police Department, is sued on a *Monell* theory of liability.

1.    The Entry Into The Apartment

On July 4, 2012, officers Smith and Hansen were dispatched to an apartment on Mohr Lane in Concord to respond to a report "of a fight or neighbors fighting." Docket No. 76-2 at 6.[1] The parties present no further evidence about the particulars of the citizen's call to the police (such as whether the caller saw or heard anyone being hit) or the dispatcher's statements to the responding officers. The parties present no evidence about any efforts by officers Smith and Hansen to speak to the 911 caller or anyone other than Torres upon their arrival at the scene.

When officers Smith and Hansen arrived at the apartment, they knocked on the door several times and no one answered for a "couple of minutes." Docket No. 76-2 at 78. Eventually, Torres came to the door and "cracked open" the door about six inches, stuck his head out, and then immediately stepped outside the door so the door was "right at [his] back." Docket No. 76-2 at 5, 79. To officer Smith, Torres "appeared agitated based on his tone and his demeanor." Docket No. 76-2 at 6.

One of the officers told Torres they had received a "domestic violence disturbance call" or a "domestic call" or a "domestic disturbance" call – Torres was unsure which it was -- and they needed to enter the apartment. Docket No. 76-2 at 31. Torres initially "said nothing is going on here," but then said, "'You know what, there was a verbal argument with my girlfriend.'" Docket No. 76-2 at 31. The officer said they needed to come into the home to check, but Torres refused to allow entry without a warrant. Docket No. 76-2 at 31. One of the officers said: "'We need to come in. Right now we got to check to see if she's okay.'" Docket No. 76-2 at 31. According to Torres, he let the officers follow him into the apartment because the officers were aggressive and stating that "it's the law" that he had to let them in even though they had no warrant. Docket No. 76-2 at 32.

---

[1] Torres declares that the officers visited his residence during daylight hours, rather than near midnight as defendants state. Docket No. 92 at 2-4. The time of day during which the events took place is not material to the claims or defenses. Torres also declares that defendants are "trying to push into evidence" a 911 call that does not pertain to the events at issue, *id.* at 3, but defendants do not present a 911 recording or transcript in their motion for summary judgment. Torres also asserts that the police reports are fraudulent, *id.* at 4, but provides no facts in support of this conclusory allegation.

2.     The Arrest And Uses Of Force

The parties agree that there were three uses of force after the officers entered the home: (1) near the door of the apartment, (2) during handcuffing in the kitchen, and (3) during fingerprinting later at the police station.  The parties disagree about the amount of force used and the circumstances surrounding the uses of force.

According to Torres, as soon as officers Hansen and Smith entered the apartment following him, the two officers "beat" Torres with batons from behind him.  Docket No. 18 at 10; Docket No. 76-2 at 35.[2]

Torres provides this account of the force used during handcuffing in the kitchen:  He landed on his stomach in the kitchen as a result of being beaten by the officers.  Docket No. 76-2 at 36. Officer Hansen got on top of Torres and jabbed Torres in the back of the head with a baton.  *Id.* at 37.  Torres grabbed the baton from officer Hansen; Hansen then reclaimed the baton, handcuffed Torres, and turned him over.  *Id.* at 38-46.  Officer Smith was nearby, conversing with Betty Zierke (Torres' girlfriend), who had come down the stairs in the apartment.  *Id.* at 48-49.  Torres eventually was arrested and transported to the Concord Police Department without further incident.[3]  *See id.* at 61.  Although he hurled insults and racial slurs at the officers, Torres denies that he resisted the police during the episode.  *Id.* at 56-57, 63.

Torres provides this account of the force used during fingerprinting:  He was taken to the Concord police station, where a female officer tried to fingerprint him as officer Smith stood nearby.

---

[2] Defendants deny they beat Torres with batons.  Defendants present evidence that officer Hansen grabbed Torres and walked him into the living room to be searched for weapons after Torres attempted to block the officer's path; Torres then pulled his hands away, which led officer Smith to take Torres to the ground using a leg sweep, during which Torres fell over a reclining chair and into the kitchen, with officer Smith landing on top of him.  Docket No. 76-2 at 7-10 (preliminary hearing transcript).  Because this is a defense motion for summary judgment, the court accepts the facts in the light most favorable to Torres, the nonmoving party.

[3] Defendants describe the events differently.  Defendants present evidence that Torres resisted efforts to be handcuffed by putting his hands in front of his face in a boxer's stance; to overcome the resistance, officer Smith punched the side of Torres' face.  Docket No. 76-2 at 11. Torres then started tugging on officer Smith's duty belt and uniform, and Smith felt his baton coming loose, so he grabbed the baton and delivered two jab strikes with the baton to Torres' upper torso, leading Torres to stop resisting and submit to handcuffing.  *Id.* at 12-13.  For summary judgment purposes, the court accepts the facts in the light most favorable to Torres because he is the nonmoving party.

When the female officer grabbed Torres' hand to fingerprint it, he pulled it away quickly and said his hand might be broken. Docket No. 76-2 at 66-67. Officer Smith twisted Torres' other arm to get him to lean forward while the female officer slammed his injured hand on the fingerprinting machine. *Id.* at 67-68. Torres untwisted his arm from officer Smith's grip and pulled his left hand away from the female officer. *Id.* at 70-71. Suddenly, Torres ended up on his stomach on the floor, where he was beaten by officers. *Id.* at 71. Although he could not see who was beating him, he believes it was officer Smith who grabbed his arm from behind and twisted it until Torres submitted and stopped. *Id.* at 72. Torres states that he did not resist during the incident at the police station. *Id.* at 72.

### 3. Torres' Conviction

Torres was charged with several crimes based on the events of July 4, 2012, including battery on a spouse or cohabitant (Cal. Penal Code §§ 242/243(e)(1)), obstructing/resisting an executive officer with force or violence (*id.* at § 69), battery upon an officer and emergency personnel (*id.* at §§ 242/243(b)), and resisting, delaying or obstructing a peace officer (*id.* at § 148(a)(1)). Docket No. 76-3 at 3-4. He also was charged with several other crimes against other people that occurred on different dates. Docket No. 76-3 at 1-7. Eventually, a plea deal was reached to dispose of several criminal charges pending against Torres. *Id.* at 20-23. As to the events on July 4, 2012, Torres pled guilty to a violation of California Penal Code section 69. *Id.* at 25. The following occurred at the negotiated disposition hearing:

> THE COURT: And then Count Seven is a felony violation of Penal Code section 69, resisting an executive officer, alleging that on or about July 4th, 2012, at Concord, in Contra Costa County, that you, Mario Torres, did willfully and unlawfully attempt, by means of threats and violence, to deter and prevent Officer Daniel Smith, who was an executive officer, from performing a duty imposed upon the officer by law and knowingly resisted by the use of force and violence and by means of threats of violence the executive officer in the performance of duty. What is your plea?
>
> THE DEFENDANT: Guilty.

Docket No. 76-3 at 16-17. Torres received a prison term for his Penal Code section 69 conviction. *See* Docket No. 76-3 at 25 (abstract of judgment); Docket No. 99-1 at 2-5 (2nd amended abstract of judgment).

4.     Concord Police Department *Monell* Evidence

Defendants present more than 40 pages of training logs from the Concord Police Department showing substantial individual training activity for officers Smith and Hansen.  Docket No. 76-4 at 2-45.  The training logs show that officers Smith and Hansen both received training before July 4, 2012, that included training in domestic violence situations and uses of force.

Defendants present the Concord Police Department's "use of force policy."  Docket No. 76-4 at 47-52.  That policy states that "[i]t is the policy of the Concord Police Department to use force only as reasonable."  *Id.* at 47.  The policy elaborates on the use of force and includes a section providing that all uses of force will be reviewed by the Department.  *Id.* at 49.

Defendants present the Concord Police Department's "Use of Force Review Board" report that concluded that the uses of force by officers Smith and Hansen appear to have been within guidelines.  Docket No. 76-4 at 54-69.  The force reviewed consisted of a "distraction strike" and "impact weapon" used by officer Smith, *id.* at 55, and an "impact weapon" used by officer Hansen, *id.* at 56.

B.     The Claims To Be Adjudicated

The court earlier determined that the third amended complaint stated the following claims: (1) a claim against officers Hansen and Smith for an unreasonable search under the Fourth Amendment based on the warrantless entry of the residence; (2) a claim against officers Hansen and Smith for the use of excessive force in violation of the Fourth Amendment based on three uses of force (i.e., beating Torres upon entry into the residence, after he was handcuffed, and when he was at the police station); (3) a claim against officers Hansen and Smith for false arrest in violation of the Fourth Amendment; (4) a claim against officers Hansen and Smith for false imprisonment based on Torres' detention after his arrest; and (5) a *Monell* claim against the Concord Police Department based on the alleged failure to train and supervise officers and failure to properly investigate police misconduct.  *See* Docket No. 21.

Defendants now move for summary judgment against Torres.  Defendants attack Torres' Fourth Amendment claims with a *Heck* argument, urging that his Fourth Amendment claims must

be rejected because success on any of those claims would undermine the validity of Torres' conviction for obstructing/resisting an executive officer with force or violence. Next, defendants argue that the two officers are entitled to qualified immunity against those same Fourth Amendment claims. Finally, defendants argue that the Concord Police Department is entitled to judgment as a matter of law on the *Monell* claim because Torres has no proof to support his allegations.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald,* 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, Torres' third amended complaint was

signed under penalty of perjury. *See* Docket No. 18 at 45. Facts stated in that pleading are considered as evidence for purposes of deciding the motion.

The court's function on a summary judgment motion is not to make credibility determinations nor to weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Id.* at 631.

## DISCUSSION

A.      The *Heck* Issues

Defendants attack all of Torres' Fourth Amendment claims with an argument based on *Heck v. Humphrey*, 512 U.S. 477 (1994). Specifically, they argue that *Heck* bars Torres' Fourth Amendment claims for unlawful entry, excessive force, false arrest, and false imprisonment because success on any of those claims would undermine the validity of Torres' conviction for obstructing/resisting an executive officer with force or violence. As will be explained, *Heck* does not bar the excessive force and wrongful entry claims because the conviction cannot be definitively tied to a particular act of resistance by Torres. But *Heck* does bar Torres' false arrest and false imprisonment claims.

The *Heck* case held that a plaintiff cannot bring a civil rights action for damages for a wrongful conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, unless that conviction or sentence or other decision already has been determined to be wrongful. *See id.* at 486-87. A conviction or sentence may be determined to be wrongful by, for example, being reversed on appeal or being set aside when a state or federal court issues a writ of habeas corpus. *See id.* The *Heck* rule also prevents a person from bringing an action that--even if it does not directly challenge the conviction or other decision--would imply that the conviction or other decision was invalid. The practical importance of the *Heck* rule is that plaintiffs cannot attack their convictions or sentences in a civil rights action for damages and instead must have successfully attacked the decision before filing the civil rights action for damages.

1.      <u>*Heck* Does Not Bar The Excessive-Force Claims</u>

*Heck* generally does not bar claims for use of excessive force, even if the force was used during the course of an arrest, because such claims rarely imply the invalidity of most subsequent convictions or sentences. *Heck* will not bar a claim for excessive force where the force used can be separated from the resisting behavior on which the conviction rests. *See, e.g., Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (conviction for resisting arrest did not result in *Heck* bar to claim for excessive force during arrest "when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction'"); *Smith v. City of Hemet*, 394 F.3d 689, 696-98 (9th Cir. 2005) (conviction for resisting arrest did not result in a *Heck* bar to excessive-force claim "because the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction"); *Smithart v. Towery*, 79 F.3d 951, 952-53 (9th Cir. 1996) (conviction, pursuant to guilty plea, for assault with a deadly weapon (i.e., a truck driven at police) did not result in *Heck* bar to excessive-force claim because the force allegedly was used after plaintiff exited his vehicle). *Heck* also will not bar an excessive-force claim where one cannot determine the specific behavior on which the conviction rests, as may occur with a guilty plea. *See, e.g., Reese v. County of Sacramento*, 888 F.3d 1030, 1046 (9th Cir. 2018) (claim that officer used excessive force by shooting suspect was not *Heck*-barred due to existence of conviction for drawing or exhibiting a deadly weapon in a rude, angry, or threatening manner because that conviction was pursuant to a no-contest plea and could have been based on plaintiff brandishing a knife at the police *or* exhibiting a knife to his neighbor before the police even arrived); *Smith*, 394 F.3d at 698 (conviction, pursuant to a guilty plea, for resisting arrest did not result in *Heck* bar to excessive-force claim because the record did not reflect which acts were the basis for his plea).

Defendants argue that *Heck* bars the excessive-force claims because Torres was convicted of a violation of California Penal Code section 69, resisting an executive officer in the performance of his or her duty, and one of the elements of that crime is that the officer was acting lawfully at the time of the section 69 offense. Although they are correct that a conviction under California Penal Code section 69 requires that the officer be performing his or her lawful duty when the criminal

defendant used force or violence to resist the officer,[4] that does not fully resolve the *Heck* question.

The problem for defendants is that one cannot determine with certainty which of Torres' acts forms the basis for his section 69 conviction. This inability to match the conviction with particular conduct often occurs when, as here, the § 1983 plaintiff has pled guilty to one resisting-arrest type offense and has alleged several different acts of resistance and several different uses of force by the police. Here, one cannot determine whether Torres' § 69 conviction is based on Torres' actions just inside the front door of the apartment, in the apartment kitchen, or later at the police station. Without knowing that information, one cannot say with certainty that *Heck* bars his excessive-force claims for force used at the front door, in the kitchen, or later at the police station. For example, if Torres' conviction rests on his conduct inside the front door of the apartment, that conviction would not be called into question by a finding in this action that officer Smith used excessive force on him at the police station. "Excessive force used after an arrest is made does not destroy the lawfulness of the arrest." *Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001) (if the officer "used excessive force subsequent to the time [the plaintiff] interfered with his duty, success in her section 1983 claim will not invalidate her conviction" under California Penal Code section 148 for resisting, obstructing, or delaying an executive officer). Here, the charging document, the plea colloquy, and the abstract of judgment offer no clue as to the particular conduct that supports Torres' conviction, except that it can be discerned from the plea colloquy that it was force and violence used by Torres against officer Smith (and not Hansen) on July 4, 2012.

On the record now before the court, one cannot say that success on any of the three excessive-force claims necessarily would call into question the validity of Torres' § 69 conviction. *Heck* therefore does not bar his excessive-force claims. *Sanford v. Motts*, 258 F.3d 1117, 1119 (9th Cir.

---

[4] The pattern jury instruction for California courts provides that the People must prove the following to establish a violation of California Penal Code section 69: "1. The defendant [unlawfully] used force [or violence] to resist an executive officer; 2. *When the defendant acted, the officer was performing (his/her) lawful duty*; AND 3. When the defendant acted, (he/she) knew the executive officer was performing (his/her) duty." Judicial Council Of California Criminal Jury Instruction (CALCRIM) 2652 (emphasis added; brackets in original). That instruction further states that a "peace officer is not lawfully performing his or her duties if he or she is (unlawfully arresting or detaining someone/ [or] using unreasonable or excessive force in his or her duties)." *Id.* (brackets in original).

2001) (where one of several incidents may have been the factual basis for plaintiff's conviction based on a plea of nolo contendere, it "was the burden of the defendants to establish their [*Heck*] defense by showing what the basis was; they failed to do so").

### 2.   *Heck* Does Not Bar The Unlawful-Search Claim

Defendants next argue that *Heck* bars the Fourth Amendment claim for an unlawful search based on the officers' warrantless entry into the apartment. As with the argument about the excessive-force claims, defendants argue that *Heck* applies to the unlawful-search claim because one of the elements of a section 69 offense is that the officer was acting lawfully at the time of the section 69 offense. Defendants rely on *Marlow v. City of Orange*, 282 F. App'x 575 (9th Cir. 2008), as support for their argument.

In *Marlow*, the Ninth Circuit held that the plaintiff's unlawful entry claim was barred by *Heck* due to her conviction for violating California Penal Code section 148(a)(1), another resisting-arrest type statute. The Ninth Circuit explained that the unlawful-entry claim was barred by *Heck* because one of the elements of the section 148(a)(1) offense was that the officer had to be engaged in the lawful performance or discharge of his duties at the time of the offense. *Marlow*, 282 F. App'x at 576.

> If the officers had no reason to believe they had a duty to investigate what was going on inside Marlow's apartment in the first place—and thus unlawfully demanded entry into and entered her apartment—then any subsequent obstruction or assault by Marlow would not have involved an officer performing his lawful duties and so would not have constituted the specified crimes. Because Marlow's convictions depended on the jury finding that the officers had a right to enter Marlow's apartment to investigate, a successful unlawful entry claim would "necessarily imply the invalidity of [Marlow's] conviction[s]" and is thus barred by *Heck*, 512 U.S. at 487, 114 S. Ct. 2364.

*Marlow*, 282 F. App'x at 576-77 (alterations in original).

Although *Marlow* looks at first blush to be somewhat similar to Torres' case, the case is distinguishable in that both of the incidents that could be the basis for the *Marlow* plaintiff's convictions occurred in the apartment immediately before or during the officers' entry into the apartment. *See id.* at 577 (her "obstruction conviction could have been based on her refusal to permit the officers entry into her apartment"), *id.* ("Marlow's conviction for assaulting Officer Johnson

10

was complete, at the latest, just before she pushed him" after which the officer allegedly used excessive force by pushing her to the ground in the apartment as he entered). The *Marlow* plaintiff's behavior that supported her resisting-arrest conviction thus was closely tied in time and place to the officers' allegedly unlawful entry into her apartment; she could not have been convicted if the officers were in her apartment unlawfully. In Torres' case, by contrast, there is the possibility that the conduct that forms the basis for his conviction took place at the police station, rather than at the apartment, because one of the three incidents where he may have obstructed Smith occurred at the police station. That makes a difference because the officers could have unlawfully entered the residence yet have been engaged in the lawful performance of their duties at the police station when Torres struggled with Smith at the police station. Success on a claim that the officers unlawfully entered the residence would not necessarily imply the invalidity of a conviction for resisting officer Smith in the lawful performance of his duties at the police station. As mentioned in the preceding section, one simply cannot determine from the record which conduct formed the basis for the conviction. That inability to say with certainty which particular conduct underlies the section 69 conviction does not mean that the defendants prevail; rather, it means that *Heck* does not bar the unlawful entry claim.

Defendants point out that, like Torres, the plaintiff in *Marlow* alleged multiple excessive-force claims as well as an unlawful-search claim based on the police officers' entry into the residence. The fact that there may have been multiple incidents of excessive force does not matter to the unlawful-search claim. It is the connection between the entry and the conviction, rather than between the entry and the officers' use of force, that matters for *Heck* purposes on the unlawful-search claim.

### 3. *Heck* Bars The False Arrest And False Imprisonment Claims

Defendants contend that Torres' claims that he was falsely arrested and falsely imprisoned are barred by the *Heck* rule because he was convicted of resisting arrest. The court agrees.

The Fourth Amendment requires that an arrest be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Michigan v. Summers*, 452 U.S. 692, 700 (1981) (an

arrest is unlawful unless there is probable cause to support it). An arrest is supported by probable cause if, under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime. *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010). To prevail on a § 1983 claim for false arrest and false imprisonment, a plaintiff must show that there was no probable cause for his arrest. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). The claim for wrongful detention, i.e., false imprisonment, generally fails when a claim for wrongful arrest fails. *See generally Baker v. McCollan*, 443 U.S. 137, 142-45 (1979).

The claims that officers Hansen and Smith falsely arrested Torres, and thereafter falsely imprisoned him, are barred by the *Heck* rule because a finding in this action that there was not probable cause to arrest or detain Torres would undermine the validity of his conviction for violating California Penal Code section 69 that day. *Heck* bars the false arrest and false imprisonment claims. *See Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) (*Heck* barred plaintiff's claims of wrongful arrest, malicious prosecution and conspiracy among police officers to bring false charges against him); *Cabrera*, 159 F.3d at 380 (*Heck* barred plaintiff's false arrest and imprisonment claims until conviction was invalidated); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (*Heck* barred plaintiff's claims that defendants lacked probable cause to arrest him and brought unfounded criminal charges against him). Defendants are entitled to judgment as a matter of law in their favor on the claims for false arrest and false imprisonment.

B.    Qualified Immunity

Officers Smith and Hansen urge that they are entitled to qualified immunity because they did not violate Torres' Fourth Amendment rights or, if they did, the contours of the law were not sufficiently well-established to give any reasonable officer notice that what he was doing was unlawful. The court disagrees for the reasons explained below.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The doctrine of qualified immunity attempts to balance two important and sometimes competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine thus intends to take into account the real-world demands on officials in order to allow them to act "swiftly and firmly" in situations where the rules governing their actions are often "voluminous, ambiguous, and contradictory." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.*

To determine whether a government official is entitled to qualified immunity, courts must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

"An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (alteration and omission in original; citation omitted). This is an "exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Id.* (alteration in original; internal quotation marks omitted); *see, e.g., Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (law not clearly established whether officer may conduct a "knock and talk" at any entrance to a home that is open to visitors, rather than only at the front door); *Hines v. Youseff*, 914 F.3d 1218, 1229 (9th Cir. 2019) (defendants entitled to qualified immunity where "the specific right that the inmates claim in these cases—the right to be free from heightened exposure to Valley Fever

spores—was not clearly established at the time"); *Horton v. City of Santa Maria*, 915 F.3d 592, 601-02 (9th Cir. 2019) (officer entitled to qualified immunity on failure-to-protect claim from pretrial detainee who attempted to hang himself because there was conflicting information as to whether he was suicidal and the case law "was simply too sparse, and involved circumstances too distinct from those in this case, to establish that a reasonable officer would perceive a substantial risk that [detainee] would imminently attempt suicide").

The Supreme Court "has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (officer entitled to qualified immunity for shooting a woman who was armed with a large knife, was ignoring officers' orders to drop the weapon, and was within striking distance of her housemate; prior cases on excessive force did not clearly establish that it was unlawful to use force under these circumstances, where officer may not have been in apparent danger but believed woman was a threat to her housemate); *Mullenix v. Luna*, 136 S. Ct. 305, 308-312 (2015) (officer entitled to qualified immunity for firing at fleeing suspect in high speed car chase after suspect had threatened to shoot officers involved in his pursuit because it was not clearly established that Fourth Amendment prohibited officer's conduct in the situation she confronted; rejecting as too broad and general circuit's Fourth Amendment formulation that officer may not use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officers or others); *Sheehan*, 135 S. Ct. at 1768 (officers entitled to qualified immunity because the general Fourth Amendment "objective reasonableness" standard for excessive force was too general and there was no clearly established law regarding whether the officers' failure to accommodate or consider that the suspect was mentally ill violated the Constitution).

### 1. The Warrantless Entry

Defendants argue that they are entitled to summary judgment on Torres' claim that they violated his Fourth Amendment right against unreasonable searches by entering the residence without a warrant.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend IV. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," and warrantless searches of the home "are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 585-86 (1980).

There are several exceptions to the unlawfulness of a warrantless entry. The party relying on the exception bears the burden of showing that the search meets the parameters for the exception to the warrant requirement. *See Rodriguez v. City of San Jose*, 930 F.3d 1123, 1137 (9th Cir. 2019). The two potential exceptions in this case are exigent circumstances and emergency aid. Courts have looked to both exceptions to determine whether a warrantless entry may be made when police are responding to a domestic violence call.

The "exigent circumstances" exception applies when there are "'circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.'" *United States v. Brooks*, 367 F.3d 1128, 1135 (9th Cir. 2004) (omission in original). *Brooks* explained that the Ninth Circuit has declined to find "that domestic abuse cases create a per se exigent need for warrantless entry," and instead requires courts to "assess the total circumstances, presented to the law officer before a search, to determine if exigent circumstances relieved the officer of the customary need for a prior warrant." *Id.* at 1136.

"The emergency aid exception permits law enforcement officers to 'enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" *Bonivert v. City of Clarkston*, 883 F.3d 865, 876 (9th Cir. 2018) (emergency aid exception did not apply because the house was silent; the alleged victims of domestic violence were outside the house and had assured officers there were no weapons in the house as well as that the husband inside the house did not pose a danger to himself). Although recognizing the "especially volatile nature of domestic disputes," *Bonivert* also declined to find a *per se* rule that warrantless entry may be made in domestic violence cases. *Id.* at 877. "Indeed, all of our decisions involving

15

a police response to reports of domestic violence have required an objectively reasonable basis for believing that an *actual or imminent injury* was unfolding in the place to be entered." *Id.* (citing *United States v. Black*, 482 F.3d 1035, 1039 (9th Cir. 2007); *Brooks*, 367 F.3d at 1135; *United States v. Martinez*, 406 F.3d 1160, 1162, 1165 (9th Cir. 2005)) (summary judgment improper because there were at least triable issues of fact as to whether violence was imminent and whether warrantless entry was justified).

Defendants fail to present evidence sufficient to allow the court to grant their motion for summary judgment on qualified immunity against the warrantless entry claim. Because defendants are moving for summary judgment on this affirmative defense, they must come forward with evidence that would entitle them to a directed verdict if the evidence went uncontroverted at trial. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). Defendants' meager evidentiary showing fails to persuade the court. Defendants' evidence about the entry shows: (1) officers Smith and Hansen were responding to a report of a "fight" at the apartment; (2) Torres was agitated when he met the officers and admitted to having had an argument with his girlfriend; (3) it took a minute or two for Torres to answer the door, which he initially opened only a few inches before stepping outside to talk to the officers; and (4) Torres insisted that the officers needed a warrant to enter the apartment. Defendants do not present any evidence about the contents of the 911 call, other than the rather generic information that it involved a report of a "fight." Fights come in all stripes, including purely verbal fights, and a mere argument would provide scant justification to enter based on the emergency-aid or exigent-circumstances exceptions. Defendants present no evidence that they attempted to determine any particulars about the "fight" or the caller's credibility before demanding entry. The other evidence does not shed much light on the applicability of the exceptions: viewed in the light most favorable to Torres, the evidence supports an inference that he was agitated because the officers were insisting on entry without a warrant. A citizen's insistence that an officer have a warrant before entering does not show the existence of an exigent circumstance or the need to enter to render emergency aid. *See Thomas v. Dillard*, 818 F.3d 864, 884-85 (9th Cir. 2016) (quoting *United States v. Santos*, 403 F.3d 1120, 1125-26 (10th Cir. 2005) ("'A refusal to consent to a search cannot itself form the basis for reasonable suspicion. . . . If refusal of consent

were a basis for reasonable suspicion, nothing would be left of Fourth Amendment protections.'").

Defendants contend this case is similar to *Brooks*, in which exigent circumstances were found to exist, but *Brooks* had more compelling facts. There, a hotel guest called the police to "report[] hearing what she thought were sounds of a woman being beaten" in an adjoining hotel room; the officer spoke to the 911 caller upon arrival at the hotel and had a chance to assess her credibility; the officer went to the hotel room and heard a man make a comment indicating a second person was in the hotel room; the man who answered the hotel room door admitted to having a loud argument and stated that the woman was in the bathroom; and the hotel room appeared in "total disarray." *Brooks*, 367 F.3d at 1130, 1134; *see id.* at 1134 n.8. By contrast, in Torres' case, no evidence is presented to show that the 911 caller specified that the fight was something more than an argument; no evidence is presented that the 911 caller's credibility was assessed; no evidence is presented that anyone other than Torres was in the apartment when police arrived; and no evidence is presented that police saw any condition inside of the apartment suggesting that a fight had occurred or someone was in need of assistance.

Viewing the scant evidence in the record regarding what the officers knew when they entered the apartment, a reasonable trier of fact could conclude that the warrantless entry amounted to a violation of Torres' Fourth Amendment rights.

The contours of the law on exigent circumstances and emergency aid were sufficiently definite that any reasonable official would have understood that he could not enter the apartment under the circumstances shown to exist here. The Ninth Circuit has repeatedly – both before and after July 4, 2012 – refused to find a *per se* rule that a complaint of domestic violence brings the officers within the emergency-aid or exigent-circumstances exception to the warrant requirement. *See Brooks*, 367 F.3d at 1136 ("We do not suggest that domestic abuse cases create a per se exigent need for warrantless entry"); *Bonivert*, 883 F.3d at 877 (although domestic disputes can be volatile, "we have refused to hold that 'domestic abuse cases create a per se' emergency justifying warrantless entry," citing *Brooks*, 367 F.3d at 1136); *id.* (citing cases from 2004, 2005, and 2007, and stating that "all of our decisions involving a police response to reports of domestic violence have required an objectively reasonable basis for believing that an *actual or imminent injury* was

unfolding in the place to be entered"). "Plainly, domestic violence calls vary widely in the actual threats they pose to officers and others. An officer therefore must consider the specific factual circumstances of an encounter to justify a particular search or seizure." *Thomas v. Dillard*, 818 F.3d 864, 881 (9th Cir. 2016); *see also id.* at 882 ("We have never suggested that a suspicion of 'domestic violence' alone provides sufficient justification for a given police intrusion"). Officers Smith and Hansen are not entitled to qualified immunity against Torres' claim that they violated his Fourth Amendment rights by entering the apartment without a warrant.

2.      The Excessive-Force Claims

Excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989). To determine whether a use of force was objectively reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing government interests at stake." *Id.* at 396. This "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The second of these so-called *Graham* factors—whether there is an immediate threat to the safety of the arresting officer or others—is the most important." *Ames v. King County*, 846 F.3d 340, 348 (9th Cir. 2017).

Defendants contend they are entitled to qualified immunity on the three excessive-force claims because Torres' statements describing the force used on him are "self-serving uncorroborated" statements that are insufficient to create a genuine issue of fact for trial. Docket No. 76 at 25. They cite several Ninth Circuit cases in support of that general proposition. The rule is more nuanced than defendants recognize.

The Ninth Circuit discussed the uncorroborated self-serving declaration issue in *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015), and *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007).

18

We have previously acknowledged that declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position. *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir.2007) (holding that the district court erred in disregarding declarations as "uncorroborated and self-serving"). Although the source of the evidence may have some bearing on its credibility and on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature. *See id.* However, a self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence. *See id.*; *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n. 5, 1061 (9th Cir.2002) (holding that the district court properly disregarded the declaration that included facts beyond the declarant's personal knowledge and did not indicate how she knew the facts to be true); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

Here, Nigro's declaration and deposition testimony, albeit uncorroborated and self-serving, were sufficient to establish a genuine dispute of material fact on Sears's discriminatory animus. He related statements made to him both in person and over the telephone. His testimony was based on personal knowledge, legally relevant, and internally consistent.

*Nigro*, 784 F.3d at 497-98. A declarant's inability to corroborate events that happened when only he and one other person were present, such as a personal conversation, is "unremarkable" and "does not disqualify either participant from testifying about the interchange—subject, of course, to a credibility determination by the finder of fact." *Phan*, 500 F.3d at 910.

Here, the fact that Torres' testimony is self-serving and may be uncorroborated does not preclude the court from considering it in a summary judgment proceeding. To the extent he is describing the actions of himself and the police officers with whom he interacted, he certainly had personal knowledge of those events and reasonably could testify to them. It is for the trier of fact to determine whether his statements are credible.

Defendants also argue that Torres' description of the first and third instances of force used on him do not create a triable issue because he could not actually see who was beating him, given that the blows allegedly were landed when he faced away from his assailants. The court disagrees. As to the first instance, Torres testified that the two officers hit him from behind when they followed him into the apartment. There were only two officers behind him and Torres testified that he could feel blows being inflicted from two sources. A reasonable trier of fact could conclude that a person could perceive that both persons who were behind him were attacking him by using senses other

than his vision. As to the third use of force, both Torres and Smith agree that Smith had his hand on Torres and twisted Torres' arm before Torres landed on his stomach on the floor in the police station. Officer Smith agrees that he was involved in an altercation with Torres, although he describes it differently. *See* Docket No. 76-2 at 15-17. The court cannot say that no reasonable trier of fact could conclude that Smith used excessive force on Torres in that incident. *See Lolli v. County of Orange*, 351 F.3d 410, 417 (9th Cir. 2003) ("Even though Lolli has not been able to identify precisely which officer delivered which alleged blow or use of force, he has developed and presented sufficient evidence from which a jury could infer that the individual officers who had physical contact with Lolli participated in the alleged beating."). Torres' inability to identify who inflicted the blows on him while he was lying on the floor on his stomach does not nullify the possibility that Smith's actions amounted to excessive force.

There are disputed facts about what occurred during the three uses of force on Torres. Viewing the evidence in the light most favorable to Torres, officers Smith and Hansen assaulted him several times when he was offering no resistance at all. Viewing the evidence and reasonable inferences in the light most favorable to Torres, a reasonable trier of fact could find in his favor on the excessive-force claims. The law was clearly established that it was unlawful to beat a nonresisting suspect during an arrest. *See generally Young v. County of Los Angeles*, 655 F.3d 1156, 1164 (9th Cir. 2011) (if a jury believed evidence that officer hit plaintiff with a baton while plaintiff was lying face-first on the ground, "it could readily conclude that the force used was far in excess of any safety concerns, reasonable or otherwise, that might have motivated [officer's] alleged conduct"); *id.* at 1168 ("The principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was thus well-established in 2001, years before the events at issue in this case."); *Blankenhorn v. City of Orange*, 485 F.3d 463, 480-81 (9th Cir. 2007) (punching arrestee who was face-down and not maneuvering his arms beneath his body amounted to excessive force in violation of Fourth Amendment). Defendants therefore are not entitled to judgment in their favor on the merits of the excessive-force claims or the defense of qualified immunity.

3.     The False-Arrest And False-Imprisonment Claims

Officers Smith and Hansen assert they are entitled to qualified immunity against Torres' claims for false arrest and false imprisonment.  As mentioned earlier, the officers are entitled to judgment as a matter of law on the false-arrest and false-imprisonment claims because those claims are barred by *Heck*.  In light of the rejection of these claims under that rationale, the court need not decide whether the officers also have qualified immunity against the claims for false arrest and false imprisonment.

C.     The *Monell* Claim Fails

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); however, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior, *see Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995).  To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.  *See Plumeau v. School Dist. #40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

In the order of service, the court determined that the third amended complaint, liberally construed, stated "a *Monell* claim against the Concord Police Department based on the alleged failure to train and supervise officers, and failure to properly investigate police misconduct." Docket No. 21 at 8 (citing Docket No. 18 at 13-14)..  The question today is whether there is any evidence that would allow a jury to find such liability.

The *Monell* claim fails as a matter of law because Torres presents absolutely no evidence in support of his allegations.  He presents no evidence that there was any particular policy, practice or custom, let alone one that evinced deliberate indifference to his constitutional rights or was the

moving force behind the alleged constitutional violations. Given the dearth of evidence on necessary elements of a *Monell* claim, the Concord Police Department is entitled to judgment as a matter of law on the claim.

D. Referral To *Pro Se* Mediation Program

This case appears to be a good candidate for the court's mediation program. Good cause appearing therefor, this case is now referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the *Pro Se* Prisoner Mediation Program. The proceedings will take place within 120 days of the date this order is filed. Magistrate Judge Illman will coordinate a time and date for mediation or settlement proceedings with all interested parties and/or their representatives and, within five days after the conclusion of the proceedings, file with the court a report for the prisoner mediation or settlement proceedings.

Plaintiff must attend and participate in the mediation or settlement conference proceedings. The conference may be set up so that he will appear in person, by videoconference or by telephone; he must attend in whatever format Magistrate Judge Illman chooses. Plaintiff is cautioned that he may be sanctioned for failure to comply with an order to participate in a mediation or settlement conference, and such sanctions may include dismissal of part or all of the action. *See* Fed. R. Civ. P. 16(a), (f), and 41(b).

E. Torres' Request For Stay And Discovery

Torres' latest request for a stay of the proceedings is DENIED. Docket No. 100.

Torres indicates that defendants have been resisting his efforts to obtain replacement copies of two CDs that were produced to him earlier when he was in custody but were seized by state prison officials. *See* Docket No. 100. The court recognizes that the defendants in this action (i.e., a municipality and two local police officers) do not control the operations of the state prison system. Nonetheless, in the interest of resolving this discovery dispute expeditiously, the court now orders the following: First, no later than **September 16, 2019,** defendants must file with the court and serve on plaintiff a copy of any CD containing a recording of the 911 call on July 4,

2012, any video, and any photographs relevant to the events on July 4, 2012, giving rise to Torres' complaint. Second, no later than **September 20, 2019**, defense counsel and Torres must meet and confer *in person* to attempt to resolve any outstanding discovery disputes.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Docket. No. 76. Defendants are entitled to judgment in their favor on Torres' false arrest, false imprisonment and *Monell* claims. The motion for summary judgment is otherwise denied.

This action is now referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the *Pro Se* Prisoner Mediation Program. The Clerk shall send a copy of this order to Magistrate Judge Illman.

Torres' motion for a stay of proceedings is DENIED. Docket No. 100. Defendants must file and serve the documents identified in Section E no later than **September 16, 2019**. Torres and defense counsel must meet and confer *in person* no later than **September 20, 2019**, to attempt to resolve any outstanding discovery disputes. They also are encouraged to begin discussing settlement prospects at that meet-and-confer session.

**IT IS SO ORDERED**.

Dated: August 30, 2019

_____
SUSAN ILLSTON
United States District Judge